Jerry BRADLEY and Ina Bradley,
Plaintiffs,

v.

MARYLAND CASUALTY COMPANY,
Defendant.

Civ. A. No. 82–109.

United States District Court,
D. Delaware.

May 5, 1983.

Arthur Inden and Josy W. Ingersoll of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

James T. McKinstry and Robert J. Katzenstein of Richards, Layton & Finger, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This diversity action was brought by Jerry Bradley and Ina Bradley, both citizens of Delaware, against Maryland Casualty Company ("Maryland Casualty"), a Maryland corporation, authorized to transact insurance business in Delaware, seeking monetary damages based on claims of fraud, willful or wanton infliction of mental distress, and breach of fiduciary duty. Maryland Casualty now moves for summary judgment, contending that plaintiffs' claims are barred by the statute of limitations.

This suit has its origins in a June 18, 1958 accident in which plaintiff Jerry Bradley severely injured his back while employed by Anchor Motor Freight. As a result of this injury, Mr. Bradley became a quadriplegic and has remained in that condition until the present time.

Maryland Casualty was the workmen's compensation insurance carrier for Anchor Motor Freight. Shortly after the accident, Maryland Casualty notified the Bradleys of the benefits to which Mr. Bradley was entitled under the Delaware Workmen's Compensation Laws. (Docket Item ["D.I."] 1, at 1.) Plaintiffs contend, however, that "[d]espite full knowledge of Mr. Bradley's right to receive nursing care under the law, and to have such care compensated, Maryland Casualty never informed plaintiffs that they were entitled to such compensation for nursing services, and in fact informed Mrs. Bradley that she was not entitled to such compensation." (D.I. 26, at 3.) Because Mr. Bradley's condition necessitated full time nursing care, Mrs. Bradley was forced to forego any gainful employment and had to provide the nursing care herself on a full time basis. As a result, plaintiffs contend that they and their three children were forced to live in a financially destitute condition.

In 1970, Mrs. Bradley requested $50 per week compensation from Maryland Casualty for the nursing care she gave to her husband. Mrs. Bradley requested in 1972 that these payments be increased to $100 per week. Plaintiffs allege that Maryland Casualty paid these increases because it feared that the Bradleys would otherwise turn to the Industrial Accident Board for relief.

In July of 1978, the Bradleys retained Arthur Inden as their attorney in connection with an unrelated automobile accident. Thereafter, Mr. Bradley discussed with Mr. Inden the benefits available to him under Delaware's Workmen's Compensation Laws, in particular, the possibility of receiving permanency and disfigurement awards. As a result, the Bradleys decided to retain Mr. Inden as counsel to pursue all available workmen's compensation claims. In August of 1978, Mr. Inden notified Maryland Casualty that he represented the Bradleys in connection with Mr. Bradley's workmen's compensation claims and that he intended "to have Mr. Bradley rated for permanency and disfigurement." (D.I. 34, at 4.)

Thereafter, the parties attempted to settle these claims, but they were only successful in reaching an agreement on the rate of nursing care. In December of 1980, Mr. Inden filed a petition with the Industrial Accident Board ("IAB") on behalf of the Bradleys for permanency and disability awards as well as for past due nursing care benefits.[1] The parties were able to agree on a $30,000 settlement for home modification and the purchase of a van and on a $105,346.35 settlement for some of the permanent disability claims.

With regard to the remaining claims before the IAB, however, Maryland Casualty raised the defense that Mr. Bradley had not proved the need for nursing care benefits prior to 1970. As a result of this defense, Mr. Inden requested that Maryland Casualty produce its files in order that Mr. Inden

---

1. In his affidavit, Mr. Inden had stated that the petition had been filed with the IAB on February 8, 1979. (D.I. 42, at 2.) At the hearing, Mr. Inden explained to the Court that he had intended originally to file the petition on that date but that due to extensive negotiations with Maryland Casualty in an attempt to settle the claim, Mr. Inden did not file the petition until December of 1980.

could "evaluate Maryland Casualty's claim that it was not on notice of the need for nursing care benefits prior to 1970." (D.I. 42, at 2.)

On July 6, 1981, portions of these files were produced for Mr. Inden. Plaintiffs contend that inspection of these documents revealed to them for the first time that:

(a) Maryland Casualty had been closely monitoring Mr. Bradley's case, was well aware of his need for full time nursing care, and the Bradleys destitute condition and had been stopping in for the purpose of creating good will and making Mr. Bradley think that Maryland Casualty had not forgotten him.

(b) Maryland Casualty's own attorney advised its claim division as far back as 1958 that Maryland Casualty had a responsibility to provide Mr. Bradley with a practical nurse at home, as well as a responsibility to pay Mrs. Bradley a reasonable amount for nursing him.

(c) Maryland Casualty only began paying Mrs. Bradley a small amount at her request in 1970 for the sole purpose of keeping her from the Industrial Accident Board, because of their fear that if she did so, full time nursing service would be ordered.

Maryland Casualty's documents revealed numerous other incidents of fraudulent and bad faith conduct against the Bradleys throughout the years.

(D.I. 42, at 3.)

Certain documents, however, were removed from the Maryland Casualty files by its attorney, Mr. Robert Ralston. In August and November of 1981, Mr. Inden, through Josy Ingersoll, an associate of his, requested a listing of the withheld documents. Mr. Ralston never produced this list. On March 7, 1982, Mr. Inden then filed this present suit,[2] contending that:

23. Defendant's twenty year concealment of Plaintiffs' right to benefits under the Delaware workmen's compensation law, their wrongful refusal to pay such benefits and their successful attempts to prevent Plaintiffs from discovering their rights under the law, constitute acts of fraud by Defendant.

\*　　\*　　\*　　\*　　\*　　\*

25. Defendant's acts of fraud caused Plaintiff Jerry Bradley to suffer severe emotional and physical distress.

26. Defendant's aforesaid acts of fraud caused Plaintiff Ina Bradley to suffer severe emotional and physical distress.

\*　　\*　　\*　　\*　　\*　　\*

28. The wrongful refusal by Defendant Md. Casualty to pay benefits which they knew or should have known were due to Plaintiffs, and their fraudulent concealment of the right to such benefits constitute wanton and outrageous conduct.

29. Defendant's aforesaid wanton and outrageous conduct has caused Plaintiffs to suffer severe emotional and physical distress.

\*　　\*　　\*　　\*　　\*　　\*

31. By reason of its dealings with Plaintiffs in an advisory capacity, and by reason of its position as a workmen's compensation insurance carrier, Defendant Md. Casualty was in a confidential and fiduciary relationship to Plaintiffs.

32. Defendant Md. Casualty's fraudulent and unfair refusal to pay benefits which it knew it should have paid to Plaintiffs constitute a breach of its fiduciary duty towards Plaintiffs.

33. Defendant Md. Casualty's failure to inform Plaintiffs of their rights under Delaware law, and its successful attempt to keep them in ignorance of that law constitute a breach of its fiduciary duty towards Plaintiffs.

34. As a result of Defendant's aforesaid fraud, intentional infliction of emotional distress, and breach of fiduciary duty as stated in Counts I through III

---

2. Mr. Bradley's claims were presented to the IAB on December 1, 1981, and the IAB awarded to Mr. Bradley: $2,591.75 for disfigurement; $4,000.20 for respiratory impairment; transportation expenses; nursing care benefits; and attorney's fees.

herein, Plaintiffs have suffered substantial damages, including, but not limited to:

(a) Severe physical discomfort, severe mental anguish and distress;

(b) Loss of employment opportunities for Plaintiff Ina Bradley;

(c) Special damages and out-of-pocket expenses.

(D.I. 1, at 4–5.)

Maryland Casualty now moves for Summary Judgment, contending that the plaintiffs' claims are barred by the statute of limitations. Specifically, Maryland Casualty contends that the statute of limitations was never tolled, since the complaint fails to allege that Maryland Casualty withheld any facts from the Bradleys, but at most, the allegations of the complaint can be read to infer that Maryland Casualty failed to advise the Bradleys of their legal rights under the workmen's compensation laws. Thus, Maryland Casualty contends there was no fraudulent concealment and the statute of limitations was never tolled. Even if there was fraudulent concealment, Maryland Casualty contends, the statute of limitations would only be tolled until the plaintiffs had discovered or should have discovered by the reasonable exercise of diligence their rights. In this particular case Maryland Casualty argues that this point of discovery would be at the time they retained Mr. Inden, because Mr. Inden made them aware of their allegedly concealed legal rights. Because Mr. Inden was retained in August of 1978 and this action was not filed until March of 1982, Maryland Casualty argues that the statute of limitations, which at most could be three years, has expired. In this respect, Maryland Casualty argues that Delaware's two year statute of limitations, 10 *Del.C.* § 8119, applies since the Bradleys' claims arise under a workmen's compensation policy. In any event, Maryland Casualty alleges that even if the three year statute of limitations, 10 *Del.C.* § 8106, is applied, the Bradleys' suit would still be untimely.

The Bradleys disagree with Maryland Casualty's analysis, arguing that the three year statute of limitations applies to their suit and that it did not begin to run until July 6, 1981, the date when Mr. Inden received the Maryland Casualty documents that disclosed the allegedly fraudulent concealment by Maryland Casualty. Specifically, the plaintiffs point out that this is an action not for any claims under the workmen's compensation laws, but rather the plaintiffs seek damages arising from Maryland Casualty's *fraudulent concealment* of the Bradleys' rights under the workmen's compensation laws. Thus, the plaintiffs contend, the facts of the fraudulent concealment were not and could not be discovered until the plaintiffs had examined the documents, since the plaintiffs could not have had even a clue as to the fraudulent concealment until the documents were viewed.

Summary judgment, pursuant to Fed.R. Civ.P. 56, will be granted only where there is no disputed issue of material fact or there is only a question of law. The Third Circuit, in particular, has adhered strictly to a limited application of Rule 56. *E.g., Hopewell Township Citizens I–95 Committee v. Volpe,* 482 F.2d 376, 380 (3d Cir.1973); *United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir.1971); *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.1969). As then Circuit Judge Biggs stated, "Summary judgment may not be granted where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Insurance Co.,* 494 F.2d 882 (3d Cir.1974). Thus, the moving party in a summary judgment motion has a substantial burden to meet.

Initially, the Court must determine whether Delaware's two year or three year statute applies in this case. Maryland Casualty contends that the Delaware two year statute of limitations, 10 *Del.C.* § 8119, applies since the plaintiffs' claims in effect arise from the Delaware Workmen's Compensation Law. The alternative applicable statute is the three year statute of limitations, 10 *Del.C.* § 8106, which the plaintiffs argue is the correct one.

The Court finds that the Delaware three year statute of limitations should be

applied in this case. Although Maryland Casualty is correct in its contention that the two year statute of limitations applies to cases involving claims arising under the workmen's compensation laws, the case at bar does not present such a claim. The Bradleys' claims arise from Maryland Casualty's allegedly *fraudulent concealment* of the Bradleys' rights under the workmen's compensation laws. Thus, the focus of the suit is on the defendant's allegedly fraudulent activities and not the workmen's compensation claims. In this respect, the courts have held that the three year statute of limitations applies to tort and contract actions where the plaintiff's injury is "unaccompanied by force or resulting indirectly from the act of the defendant." 10 *Del.C.* § 8106; *see E.M. Fleischmann Lumber Corp. v. Resources Corp. Int'l,* 211 F.2d 204, 206 n. 4 (3d Cir.1954); *Advocat v. Nexus Indus., Inc.,* 497 F.Supp. 328, 334 (D.Del. 1980); *Sonne v. Sacks,* 314 A.2d 194, 196 (Del.Sup.1973).

■ Now that the Court has determined that the three year statute of limitations should be applied to the instant case, the Court must measure whether the plaintiffs brought this suit before the period of limitations had expired. Although under Delaware law the statute of limitations in a tort action begins to run from the time of injury, Delaware case law provides that if the defendant fraudulently conceals the facts surrounding the cause of action from the plaintiff, the statute of limitations will be tolled until the time when the plaintiff has discovered or should have discovered by due diligence the facts constituting the cause of action. In the present case, the plaintiffs' suit will therefore only be timely if the statute of limitations was tolled until at least March 8, 1979, which is exactly three years before the date that the complaint was filed.

■ The Court must first consider whether the fraudulent concealment toll applies to this case. In *Halpern v. Barran,* 313 A.2d 139 (Del.Ch.1973), Chancellor Duffy outlined the law regarding fraudulent concealment in Delaware:

Fraudulent concealment of a cause of action is an independent ground for tolling a statute of limitations. Where there has been fraudulent concealment from a plaintiff, the statute is suspended only until his rights are discovered or until they could have been discovered by the exercise of reasonable diligence. Fraudulent concealment requires that something affirmative be done by a defendant, some "actual artifice" which prevents a plaintiff from gaining knowledge of the facts or some misrepresentation which is intended to put the plaintiff off the trail of inquiry. Mere ignorance of the facts by a plaintiff, where there has been no such concealment, is no obstacle to operation of the statute.

313 A.2d at 143 (citations omitted). Thus, in order to grant the defendant's motion for summary judgment, the Court must find, as a matter of law, that the fraudulent concealment tolling doctrine does not apply to the plaintiffs' claims. Upon this basis, the Court finds that it cannot grant the defendant's motion for summary judgment. As noted above, the standard for granting summary judgment in this Circuit is a difficult one to meet. The defendant has failed to meet this standard, because the Court is unable to rule as a matter of law that the plaintiffs' claim was not tolled by the doctrine of fraudulent concealment.

In viewing the record before the Court in the light most favorable to the plaintiffs, it appears that Maryland Casualty did conceal facts regarding the Bradleys' rights under the Delaware Workmen's Compensation Law. As the internal documents of Maryland Casualty confirm, Maryland Casualty was aware of the Bradleys' rights and was very concerned about keeping this information from them. The Maryland Casualty internal memoranda in addition evidence attempts by the insurance carrier to minimally raise the Bradleys' nursing care benefits in order to deter them from going to the IAB, which, Maryland Casualty acknowledged in these memoranda, would substantially increase the Bradleys' benefits. Thus, the Maryland Casualty docu-

ments demonstrate a pattern of concealment activity designed to limit defendant's payment of benefits to the Bradleys by concealing from them that they were entitled to greater benefits. It is not just the fact that Maryland Casualty failed to inform the Bradleys of their rights, but that Maryland Casualty affirmatively and actively sought to prevent the Bradleys from discovering their legal rights.

Although this Court has determined that, in the light most favorable to the plaintiffs, the defendant did attempt to fraudulently conceal facts regarding this cause of action from the plaintiffs, the Court's inquiry does not end here. Rather, the Court must further determine at what point the Bradleys discovered or should have discovered by the exercise of due diligence, the fraudulently concealed facts. This point becomes critical, for in spite of the fact that certain key information may have been affirmatively withheld from the plaintiffs, they are still under a duty, once the key information is discovered or should have been discovered, to promptly file suit before the statute of limitations has run. Thus, the focus on this point is upon the plaintiffs.

█ The Court must inquire first into how readily discoverable these facts were. If the facts were obvious to the plaintiffs, so as to put them on inquiry, then the statute will not be tolled. Mere suspicion or rumor, however, will not put a plaintiff on such notice. *See Creamer v. General Teamsters Local Union 326,* 560 F.Supp. 495, 498 (D.Del.1983).

In the present case, Maryland Casualty contends that the allegedly withheld information pertains at most to the plaintiffs' legal rights and not to any facts that comprise the Bradleys' cause of action. Maryland Casualty therefore asserts that at most the complaint alleges that Maryland Casualty's activity constituted a failure to advise the Bradleys of their legal rights, which would not toll the statute of limitations.

█ The defendant's argument, however, misses the mark. As the Court discussed above, the basis of their lawsuit is not the Bradleys' right to benefits under the workmen's compensation laws, but rather the alleged fraudulent concealment of this activity by Maryland Casualty. Thus the facts that the plaintiffs had to discover in this case were not simply their entitlement to benefits; rather, the pertinent discoverable facts were those regarding Maryland Casualty's allegedly intentional and fraudulent concealment of the Bradleys' rights. The fact that Maryland Casualty had told the plaintiffs that they were not entitled to additional benefits did not put them on notice, as a matter of law, that Maryland Casualty was acting in a fraudulent manner. If this Court were to hold otherwise, then claimants would in effect be required to infer that insurance companies were acting fraudulently whenever they denied benefits. Thus, the information in question is sufficient to toll the running of the statute of limitations.

The Court, however, must also consider whether the plaintiffs exercised due diligence in discovering this information. The plaintiffs discovered the pertinent information on July 6, 1981, when Maryland Casualty produced their documents to Mr. Inden. The remaining question, however, is whether by the reasonable exercise of due diligence, the plaintiffs should have discovered the pertinent information before July 6, 1981. In this respect, Maryland Casualty contends that the plaintiffs did not exercise due diligence, because the plaintiffs could have received the allegedly incriminating documents from Maryland Casualty at an earlier date if they had filed their IAB petition earlier. The Court, however, cannot adopt this reasoning, for to do so would fault the plaintiffs for not possessing the foresight to know that the requested documents would contain such information even before the petition had been filed. In fact, the plaintiffs only requested these documents in order to disprove Maryland Casualty's defense before the IAB that it was unaware of the Bradleys' need for pre-1970 nursing care benefits and not to find evidence of the fraudulent concealment activity, which the plaintiffs claim they were unaware of at the time. (D.I. 42, at 2.)

■ Therefore, the Court cannot find, as a matter of law, that the plaintiffs failed to exercise due diligence in discovering the facts pertinent to their cause of action. This finding, however, should not be interpreted to mean that the converse is true, namely, that the plaintiffs exercised due diligence as a matter of law. In this regard, the Court concludes on the record presented, the issue as to whether the plaintiffs exercised due diligence is best left to the province of the jury, since there is some material factual issues as to when a reasonable person exercising due diligence could have discovered the fraudulent concealment; in particular, whether the Bradleys should have discovered Maryland Casualty's activity before they retained Mr. Inden.

Accordingly, for the reasons stated above, Maryland Casualty's motion for summary judgment will be denied.

An order will be entered in accordance with this Memorandum Opinion.