**Patricia Rogers WILLIAMSON, a/k/a Patricia Rogers, Respondent,**

v.

**Robert PRASCIUNAS, et al., Appellants.**

**No. CX–02–1830.**

Court of Appeals of Minnesota.

May 20, 2003.

Robert E. Lieske, Wagner, Falconer & Judd, Ltd., Minneapolis, MN, for respondent.

Jon Breyer, Kathleen M. Loucks, Gislason & Hunter, LLP, Minnetonka, MN, for appellants.

Considered and decided by MINGE, Presiding Judge, KALITOWSKI, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

Appellants Robert and Rebecca Prasciunas challenge (1) the district court's decision to award respondent Patricia Rogers Williamson damages for civil conversion and (2) the court's valuation of the property at issue. Respondent notes review of the district court's denial of her motion to amend the complaint to seek punitive damages. Because we conclude that the district court: (1) properly ruled that appellants' fraudulent concealment tolled the statute of limitations, (2) correctly valued the property, and (3) acted within its discretion when it denied punitive damages, we affirm in all respects.

## FACTS

On June 29, 1987, respondent Patricia Rogers Williamson, then known as Patricia Rogers, sold her Edina home to appellants Robert and Rebecca Prasciunas. Due to complications with Williamson's new home, she arranged a rental agreement with the Prasciunases until July 6, 1987. According to Williamson, the moving van that she had scheduled to arrive for 8:00 a.m. that day did not arrive until 1:00 p.m., causing her moving-out to overlap with the Prasciunases' moving-in. Apparently, appellant Robert Prasciunas was very upset over this turn of events.

The home contained a small wall safe in the basement. In the safe Williamson had

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

two pieces of diamond jewelry: a diamond solitaire ring from a previous marriage and an heirloom diamond-encrusted watch that Williamson had inherited from her mother. Before leaving, Williamson tried to remove her jewelry from the safe but could not open it. Her son assisted her, but their efforts were unsuccessful. Williamson asked Mr. Prasciunas to help, but he, too, could not open the safe. Before Williamson left, she entrusted the Prasciunases with the safe's combination and told them that she was leaving some jewelry in the safe.

According to the Praciunases, Williamson called them the next day to see if they had opened the safe. They denied opening the safe. Williamson claimed that she called three times over the next two weeks to arrange a time for a locksmith to open the safe, but could not arrange a convenient time to do so. Two years passed before she sought return of her jewelry. In July 1989, Mr. Prasciunas admitted to Williamson that he had opened the safe but claimed there was no jewelry in it. He told Williamson, "It's not like there were diamonds or anything in there." Williamson sought legal advice. Her attorney advised Williamson that her only recourse was to file a criminal complaint with local authorities. On July 17, 1989, Williamson filed a complaint with the Edina Police Department in an attempt to get her jewelry back. In this complaint, Williamson listed the total value of the jewelry at $12,000. When the Edina police questioned the Prasciunases, they denied knowledge or possession of the jewelry. Unable to substantiate Williamson's claims, the investigating officer told her

there was nothing else they could do. After the Edina police completed their investigation, Mr. Praciunas called Williamson and threatened her with a lawsuit for harassment. In the call, he was abusive and screamed at her never to contact him or his wife again.[1]

Nearly twelve years passed. On March 1, 2001, Ms. Prasciunas's sister contacted Williamson with news that the Prasciunases did, in fact, have possession of the jewelry. Williamson reported this to the Edina Police Department. When confronted with this knowledge, the Prasciunases turned over the jewelry to the police. The Edina police returned the jewelry to Williamson and, at their request, she had the jewelry appraised at a total value of $12,000.

Williamson initiated the present proceeding in July 2001, claiming conversion, theft, intentional infliction of emotional distress (IIED), and defamation.[2] The Prasciunases did not file an answer, but responded by filing a motion to dismiss on the ground that the statute of limitations barred Williamson's claims. The district court denied the Prasciunases' motion to dismiss.

Subsequently, the Prasciunases filed a summary judgment motion, again asserting, inter alia, that Williamson's claim for conversion was barred by the statute of limitations. Williamson filed a responsive motion seeking summary judgment on her conversion claim and permission to amend her complaint to ask for punitive damages. The district court rejected the Prasciunases' statute of limitations defense and

---

1. In Williamson's affidavit in support of her motion for summary judgment, Williamson describes the telephone call. Although Mr. Praciunas filed an affidavit in opposition, he did not deny the call, and we take Williamson's statements as true.

2. The parties and the district court have treated the conversion and theft counts as a single cause of action. We will do the same and will refer to the two counts together as the claim for conversion.

granted summary judgment for Williamson on her conversion claim. Specifically, the district court reasoned that, because the Prasciunases steadfastly denied possession of Williamson's jewelry, they fraudulently concealed any cause of action she may have had. The district court explained that, had Williamson filed suit in 1989, any conversion claim would likely have been dismissed. As to the parties' other claims, the district court granted summary judgment for the Prasciunases on Williamson's claims for IIED because it found that she had failed to meet the high evidentiary threshold required to submit that claim to a fact-finder. The court also granted summary judgment for the Prasciunases on Williamson's claim for defamation because the two-year statute of limitations on her defamation claim had expired. Finally, the court denied Williamson's motion seeking to add a claim for punitive damages. This appeal followed.

## ISSUES

I. Did the district court properly rule that appellants' fraudulent concealment of the theft tolled the statute of limitations?

II. Did the district court properly set the value of the jewelry at $12,000?

III. Did the district court act within its discretion when it denied respondent's motion for permission to seek punitive damages?

## ANALYSIS

### I

When reviewing a summary judgment ruling, this court examines the record to determine if genuine issues of material fact remain for trial and if the district court properly applied the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We consider evidence in a light most favorable to the responding party and resolve any factual doubts in its favor. *Funchess v. Cecil Newman Corp.,* 632 N.W.2d 666, 672 (Minn.2001).

The supreme court has defined *conversion* as

an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession, and the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods.

*Christensen v. Milbank Ins. Co.,* 658 N.W.2d 580, 585 (Minn.2003) (quotations omitted).

Conversion occurs where one willfully interferes with the personal property of another "without lawful justification," depriving the lawful possessor of "use and possession." *DLH, Inc., v. Russ,* 566 N.W.2d 60, 71 (Minn.1997) (quotation and citation omitted). "Wrongfully refusing to deliver property on demand by the owner constitutes conversion." *Molenaar v. United Cattle Co.,* 553 N.W.2d 424, 430–31 (Minn.App.1996), *review denied* (Minn. Oct. 15, 1996) (citation omitted). The elements of common law conversion are: (1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest. *Olson v. Moorhead Country Club,* 568 N.W.2d 871, 872 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997). Good faith is not a defense to a claim of conversion. *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency,* 458 N.W.2d 417, 419 (Minn.App.1990).

The Prasciunases do not dispute that they converted Williamson's jewelry. Indeed, their brief contains numerous references describing their conduct as "conversion." Their sole defense to the conversion claim is that it is barred by

the statute of limitations. The district court rejected this argument, concluding that the Praciunases' fraudulent concealment tolled the statute of limitations. We agree and affirm the district court on this issue.

■■■ We begin our analysis of when the statute of limitations began to run in this case by noting that there is a marked difference between cases where fraudulent concealment is present and cases where it is not. In *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641 (Minn.1999), the Minnesota Supreme Court noted the difference. First, the court stated the general rule:

> A cause of action accrues and the statute of limitations begins to run when the cause of action will survive a motion to dismiss for failure to state a claim upon which relief can be granted.

*Id.* at 643 (footnote omitted). But in the same paragraph, the court says that cases of fraudulent concealment are an exception to the rule. "Thus, in the *absence* of fraudulent concealment, the running of the statute is not tolled by [the plaintiff's] ignorance of the cause of action." *Id.* (emphasis added) (footnote omitted).

In *Haberle v. Buchwald,* 480 N.W.2d 351 (Minn.App.1992), *review denied* (Minn. Aug. 4, 1992), this court made a careful analysis of the two different rules. First, we stated the general rule, which is that in analyzing when the statute of limitations starts to run, the inquiry centers solely on the plaintiff's knowledge—what the plaintiff knew or should have known:

> Ignorance of a cause of action *not involving continuing negligence or fraud* does not toll accrual of a cause of action. When determining whether a plaintiff was "actually aware" of the facts upon which a claim is based, the question is whether the plaintiff actually knew or should have known.

*Id.* at 356 (emphasis added) (citations omitted). We then noted that in cases of fraudulent concealment, the inquiry shifts to include not only an examination of the plaintiff's knowledge, but also an examination of the defendant's conduct:

> A statute of limitations may be tolled if the cause of action is fraudulently concealed by the defendant. To establish fraudulent concealment, a plaintiff must prove there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false * * *, and that the concealment could not have been discovered by reasonable diligence.

*Id.* at 357 (citations omitted). In *Collins v. Johnson,* 374 N.W.2d 536 (Minn.App.1985), *review denied* (Minn. Nov. 26, 1985) we pointed out that the concealment had to be fraudulent or intentional. *Collins,* 374 N.W.2d at 541.

■■ Thus, as *Herrmann, Haberle,* and *Collin's* indicate, in cases where fraudulent concealment exists, the issue is not analyzed under the rule that the statute of limitations begins to run when the plaintiff's claim could survive a motion to dismiss nor does the court focus solely on what the plaintiff know or should have known. Instead, the proper analysis is the application of the rule set out in *Haberle.* Thus, for Williamson to make a valid claim of fraudulent concealment sufficient to toll the statute of limitations, she must show that: (1) the Prasciunases made a statement or statements that concealed Williamson's potential cause of action, (2) the statement or statements were intentionally false, and (3) the concealment could not have been discovered by reasonable diligence. *See Haberle,* 480 N.W.2d at 357. In our opinion, the undisputed facts in this case show that all three elements are present.

The Prasciunases' argument focuses on the first element. They argue that, notwithstanding they lied about an essential fact, their lies did not conceal the cause of action. In effect, they argue that Williamson *knew* they had her jewelry, and therefore she could have brought suit in 1989. They say, with no apparent embarrassment:

It is uncontroverted that Mrs. Williamson placed the jewelry in the safe and locked it. Mrs. Williamson gave the combination to the Prasciunases and, when asked to relinquish the contents of the safe, they refused, denying that they possessed the jewelry. Despite the Praciunases's efforts at concealment, Mrs. Williamson had all the vital information needed to file a complaint. * * * Here, there are no facts concealed by the Prasciunases that would have prevented Mrs. Williamson from establishing a prima faci[e] case of conversion in 1989. There were no facts learned by Mrs. Williamson in 2001 that she did not already know in 1989. The return of the jewelry simply confirmed that which Mrs. Williamson already knew—that the Prasciunases possessed her jewelry. While the Praciunases' denials may have thwarted attempts at retrieving the jewelry, the denials did nothing to vitiate a complaint based on Mrs. Williamson's knowledge of the claim.

Initially, we note that the Prasciunases seek to apply the wrong test. As we stated above, the test is not whether or not Williamson could have made a prima facie case in 1989. The correct test is whether the Praciunases concealed the cause of action. In any event, the linchpin of their argument is that, in 1989, Williamson knew that the Prasciunases were lying when they said they did not have the jewelry, and because she could sue them, the statute began to run. Understandably, they wish to deflect the inquiry away from their conduct and to focus solely on what Williamson knew or should have known.

■ This position is not persuasive. As long as the Prasciunases concealed the essential fact that they had her jewelry, Williamson did not actually *know* that they had it. She may have suspected that they had the jewelry, but she had no first-hand knowledge, or even hearsay knowledge, of that fact. Mere suspicion, in a case of fraudulent concealment, is not sufficient to stop the tolling of the statute of limitations. *Bradley v. Maryland Cas. Co.,* 563 F.Supp. 602, 607 (D.Del.1983). And the reason Williamson did not actually know that the Prasciunases had her jewelry was that their continued fraudulent conduct concealed that fact from her.

Moreover, after the Edina police contacted the Prasciunases in 1989, Mr. Prasciunas called Williamson, screamed at her to never contact them again, and threatened her with a lawsuit for harassment. In the face of these facts, the Prasciunases make the astonishing argument that she should have sued them in 1989, when she had only her suspicions to support her claim and would most likely have been met by the Prasciunases' repeated, and very successful, mendacity. To accept the Prasciunases' argument that Williamson was required to sue them in 1989 would be to reward them for their twice-wrongful conduct. Accordingly, we conclude that when the Praciunases lied to Williamson and to the Edina police about the essential fact that they possessed the jewelry, the Praciunases fraudulently concealed Williamson's cause of action.

The second element that Williamson must show in order to make out a case of fraudulent concealment—that the Praciunases' statements were intentionally false—is clearly present: The Praciunases

do not dispute that they lied to both Williamson and to the Edina police.

The third element Williamson must show is that she acted with reasonable diligence to discover her cause of action. That she did so is clear from the record. In July 1989, Mr. Prasciunas told Williamson that he had opened the safe and that there was no jewelry in it. She thereupon contacted an attorney, who demanded that the Prasciunases return the jewelry. Without admitting that the Prasciunases had possession of the jewelry (thus resulting in a further concealment of the truth), their attorney notified Williamson's attorney of claims that the Prasciunases would assert against Williamson if she sued them. Williamson also contacted the Edina police, who investigated her report. When Williamson finally learned the true facts in 2001, she went to the Edina police again, and the jewelry was returned to her. The record amply supports the district court's conclusion that Williamson acted with due diligence to learn of the facts that would constitute her cause of action.

Finally, the Prasciunases imply that they were keeping the jewelry to offset the damages they incurred when they were forced to correct the defects that Williamson failed to disclose when they purchased the house. They allege that they kept the jewelry on the advice of counsel. In Mr. Prasciunas's affidavit, he claims that after Williamson's July 1989, phone call, he retained the services of an attorney, and that this attorney advised him to retain possession of the jewelry until Williamson filed suit, then counterclaim for damages. But we find it difficult to believe that the attorney advised the Prasciunases to lie to the police. The fact that the Praciunases never filed suit for the alleged damages that they claim to have suffered undercuts their claim that they were holding the jewelry as some sort of security. Moreover, after the statute of limitations expired on any potential claims by the Prasciunases, they had no lawful reason to retain possession of the jewelry. In sum, we conclude that district court properly ruled that the Praciunases' fraudulent concealment tolled the statute of limitations, and we affirm its ruling.

## II

The Prasciunases challenge the district court's ruling that set the value of the jewelry at $12,000. The controlling statute, Minn.Stat. § 604.14, subdivision 1 (2002), requires valuation of converted property at the time of conversion.[3] The statute reads in relevant parts:

> Subd. 1. Liability for theft of property. A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.
> * * * *
> Subd. 5. Recovery of property. The recovery of stolen property by a person does not affect liability under this section, other than liability for the value of the property.

*Id.*

The Praciunases argue that the district court based its finding on an appraisal done in 2001 and that there is no evidence showing the value of the jewelry "when it was stolen in 1989," to quote from their brief. Thus, they argue, there is a genuine issue of a material fact with respect to the

---

**3.** This statute, the former Minn.Stat. § 332.51, was renumbered in 2002 but has remained textually unchanged since 1986.

value of the jewelry within the operation of the governing statute. We reject this argument.

■ When Williamson moved for summary judgment, she supported her motion with an appraisal showing the value of the jewelry in 2001 as $12,000. She also submitted a copy of the police report she filed with the Edina police in 1989, in which she gave a value of $12,000 to the jewelry. An owner may give an opinion on the value of personal property. *Vreeman v. Davis*, 348 N.W.2d 756, 757 (Minn.1984). Both the appraisal and the police report were attached to Williamson's affidavit and were properly before the district court on the motion for summary judgment. The governing rule then provides:

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of the adverse party's pleading but must present specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Minn. R. Civ. P 56.05.

The Prasciunases offered no specific facts in opposition to Williamson's showing that the value of the jewelry in 1989, and in 2001, was $12,000. The best we can tell, the Praciunases' argument is that someone should have appraised the jewelry in 1989, "when stolen." A mere argument, however, does not meet the requirements of Rule 56, and we conclude that the district court properly granted summary judgment in the amount of $12,000.

### III

■ On Williamson's notice of review, she challenges the district court's denial of her motion seeking to amend the complaint for punitive damages. As a threshold matter, we note that allowing an amendment to seek punitive damages is within the discretion of the district court. *LeDoux v. Northwest Pub., Inc.*, 521 N.W.2d 59, 69 (Minn.App.1994), *review denied* (Minn. Nov. 16, 1994). A plaintiff may not seek punitive damages in the original complaint, but rather, may do so only upon permission of the court. Minn.Stat. § 549.191 (2002). Specifically, a plaintiff must file a motion seeking punitive damages and must include the applicable legal basis and one or more affidavits setting forth the factual grounds supporting issuance of punitive damages. *Id.* Punitive damages are available to a plaintiff even where the only damage is to property and are not limited to cases of personal injury. *Jensen v. Walsh*, 623 N.W.2d 247, 249 (Minn.2001). "Punitive damages are intended to punish a defendant, or to make an example of a defendant's wrongdoing," not to reward an otherwise-compensated plaintiff. *Ulrich v. City of Crosby*, 848 F.Supp. 861, 867 (D.Minn.1994).

Here the district court found that Williamson was not entitled to amend her complaint to seek punitive damages because she had already been awarded $12,000 in punitive damages. The court explained

> Influential to the court[']s ruling is the fact that [the statute] concerning civil liability for theft already provides for "punitive" damages in the amount of 100% of the value of the stolen property. The court is satisfied that the likely deterrent effect of punitive damages is satisfied by the theft statute given the nature of the conduct in this case.

Although not mentioned explicitly by the court or either party, we find significant the fact that Williamson received her jewelry back from the Prasciunases. Williamson has not only had her property re-

turned to her, but also has received a punitive damage award equal to the property's value. We conclude that it was within the discretion of the district court to deny the motion to seek additional punitive damages.

## DECISION

Because the Prasciunases fraudulently concealed Williamson's cause of action with respect to her jewelry, the statute of limitations was tolled until March 2001, when Williamson learned that the Prasciunases did, in fact, possess her jewelry. In addition, the record amply supports the district court's $12,000 valuation of the jewelry. Finally, the district court acted within its discretion when it denied Williamson permission to seek punitive damages.

**Affirmed.**