*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2052**

Joseph W. Frederick,
Appellant,

vs.

Kay L. Wallerich, et al.,
Respondents.

**Filed August 1, 2016
Affirmed
Smith, John, Judge**﹡

Blue Earth County District Court
File No. 07-CV-15-2151

Patrick H. O'Neill, Jr., Paula Duggan Vraa, Andrew Hart, Larson King, LLP, St. Paul, Minnesota (for appellant)

Kay Nord Hunt, Barry A. O'Neil, Bryan R. Feldhaus, Lommen Abdo, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Smith, John, Judge.

---

﹡ Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the district court's order granting respondents' motion to dismiss appellant Joseph W. Frederick's legal-malpractice claims as barred by the six-year statute of limitations because the district court did not err in determining that respondent attorney and her law firm did not commit separate acts of malpractice from 2007 through 2011, which would have tolled the limitations period. We further affirm because Frederick's claims do not involve separate negligent acts and he did not set forth sufficient facts to establish that respondents concealed the cause of action.

## FACTS

On September 28, 2006, Frederick and his fiancé Cynthia Gatliff met with respondent-attorney Kay L. Wallerich at respondent Farrish Johnson Law Office (collectively, Farrish Johnson) in Mankato to execute an antenuptial agreement. Frederick and Gatliff each signed the agreement, but the signature spaces designated for two witnesses were left blank. The following day, Frederick and Gatliff married. Farrish Johnson continued to advise and represent Frederick from 2007 through 2011. In September 2007, under Frederick's direction, Farrish Johnson drafted him a new will. In 2008, Gatliff signed a consent and waiver acknowledging the enforceability of the antenuptial agreement. In 2010 and 2011, Frederick executed two codicils to his will, amending the disposition of his real and personal property.

In January 2013, Gatliff (then known as Cynthia Frederick) filed for divorce. During discovery, Wallerich learned that the antenuptial agreement was invalid because it

2

lacked the statutorily required witness signatures. *See* Minn. Stat. § 519.11, subd. 2 (2014) (providing that an antenuptial agreement shall be in writing, executed in the presence of two witnesses, acknowledged by the parties, and entered into and executed prior to marriage).

On May 26, 2015, Frederick sued Farrish Johnson for legal malpractice, breach of fiduciary duty, negligent and reckless misrepresentation, and equitable tolling based on fraud. After filing its answer, Farrish Johnson filed a motion for judgment on the pleadings, arguing that the first four counts were time-barred by the six-year statute of limitations governing legal-malpractice actions. *See* Minn. Stat. § 541.05, subd. 1(5) (2014). Challenging count four, Farrish Johnson also asserted that there was no legal basis for equitably tolling the limitations period. Along with its memorandum in support of its motion, Farrish Johnson included several documents, including the dissolution judgment, a stipulation and order following appellate mediation, and a letter from Frederick's counsel documenting his intent to proceed with the complaint served in September 2013.

Frederick opposed Farrish Johnson's motion for judgment on the pleadings and moved to amend his complaint to include a gross-negligence claim and to assert new facts relating to Wallerich's lack of knowledge concerning the statutory requirements of antenuptial agreements. Frederick also moved to add a claim for punitive damages under Minn. Stat. § 549.191 (2014), but later withdrew this request.

After a hearing, the district court granted Farrish Johnson's motion for judgment on the pleadings under Minn. R. Civ. P. 12.03. Relying on the supreme court's opinion in *Antone v. Mirviss*, the district court determined that all of Frederick's claims are barred by

the six-year limitations period because Frederick's cause of action accrued and the limitations period began to run on the date of his marriage to Gatliff. 720 N.W.2d 331 (Minn. 2006). Further, it concluded Frederick's claims all arose from the single incident of the negligently unwitnessed signing of the antenuptial agreement. In a following order, the district court denied Frederick's motion to amend his complaint, stating that he failed to present any new facts or demonstrate evidence of independent negligent acts.

## D E C I S I O N

## I.    The district court did not err by granting judgment on the pleadings on statute-of-limitations grounds.

On review of a Minn. R. Civ. P. 12.03 motion for judgment on the pleadings, we review the judgment "de novo and determine only whether the complaint sets forth a legally sufficient claim for relief." *Williams v. Bd. of Regents of Univ. of Minnesota*, 763 N.W.2d 646, 651 (Minn. App. 2009) (quotation omitted). On appeal from judgment on the pleadings, we focus on the allegations in the pleadings. Minn. R. Civ. P. 12.03. We accept the factual allegations in the complaint as true and we liberally construe the complaint and draw all inferences and assumptions in favor of the nonmoving party. *Hoffman v. N. States Power Co.*, 764 N.W.2d 34, 45 (Minn. 2009). We may consider documents and statements that are incorporated by reference into the pleadings. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 739 n.7 (Minn. 2000).

Under Minnesota law, the statute of limitations begins to run when the cause of action accrues, which is "when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone*, 720

4

N.W.2d at 335. Minnesota also follows the damage-accrual rule, where a "cause of action accrues when 'some' damage has occurred as a result of the alleged malpractice." *Id*. at 335-36 (quotation omitted); *Veit v. ProSource Technologies, Inc.*, 879 N.W.2d 8, 10 (Minn. App. 2016). "'Some damage' is defined broadly, and the cause of action accrues on the occurrence of any compensable damage, whether specifically identified in the complaint or not." *Veit*, 879 N.W.2d at 10.

Frederick argues that Farrish Johnson committed separate acts of legal malpractice from 2007 through 2011, thereby extending the limitations period. Frederick principally relies on *Devereaux v. Stroup*, an unpublished case from this court to support his argument. No. A07-0103, 2008 WL 73712 (Minn. App. Jan. 8, 2008). Unpublished opinions of the court of appeals are not precedential, and, at best, can be of persuasive value. *See* Minn. Stat. § 480A.08, subd. 3(c) (2014).

*Devereaux* involved a married couple who sued an attorney for legal malpractice arising from two separate negligent acts occurring in 1997 and 2002. 2008 WL 73712 at *1. On appeal, we held that the attorney committed separate and distinct acts of negligence because the 1997 incident concerned allegedly bad advice that exposed the couple to civil and criminal liability for conversion and theft. *Id*. at *3. But in 2002, the attorney's negligence not only worsened the couple's position, but also aggravated the attorney's original negligence and increased the couple's liability. *Id.* We held that the 1997 negligence claim was time-barred, but that the claim arising from the attorney's 2002 negligent conduct was timely under Minn. Stat. § 541.05. *Id.* at *4.

Here, Frederick's claim is factually distinguishable from *Devereaux* in two key ways. First, after Frederick's marriage in 2006, his successive interactions with Farrish Johnson from 2007–2011 did not significantly worsen or enhance his losses in a way similar to what the married couple in *Devereaux* experienced. Second, Farrish Johnson's alleged misconduct from 2006–2011 is limited to improper advice concerning the validity of the antenuptial agreement. But the attorney in *Devereaux* engaged in wide-ranging and distinct forms of misconduct in 2002 (improper advice, litigation-provoking delay tactics, misrepresentations, and omissions) after only giving improper advice in 1997.

Here, following the legal reasoning in *Herrmann v. McMenomy & Severson* and *Antone*, we conclude that Frederick's claims are time-barred. 590 N.W.2d 641 (Minn. 1999). In *Herrmann*, a law firm gave a client negligent advice in 1986, which the owner relied upon to engage in prohibited business transactions beginning the following year. *Id.* at 642. The supreme court refused to consider the client's continued business transactions as causes of action or to allow his claims to proceed for damages incurred in later years. *Id.* at 643-44. Following *Herrmann*, *Antone* involved a set of similar facts to the instant case: a client who sued his attorney for legal malpractice because the attorney drafted an invalid and unenforceable antenuptial agreement, which the client did not discover until after he filed for divorce twelve years after the marriage. 720 N.W.2d at 333. The supreme court held that the client's cause of action accrued and the statute of limitations began to run on the day that he married his ex-wife because on that day he lost his nonmarital-property protections. *Id.* at 337-38. It declined to toll the limitations period so that the client could start the clock on the date that he knew the full extent of his loss. *Id.* at 336.

Here, Frederick's legal-malpractice claim would have survived a motion to dismiss on the day that he married Gatliff because that was the moment when he no longer enjoyed nonmarital protections to his property. Hence, when Frederick filed his legal-malpractice claim nine years later, it was time-barred.

We conclude that the limitations period also applies to Frederick's remaining claims because they are within the penumbra of his legal-malpractice action. In *Antone*, the supreme court collectively disposed of the client's remaining breach-of-fiduciary-duty and breach-of-contract claims under the limitations period when it dismissed his legal-malpractice claim. *Id.* at 338. We do the same here. Frederick's breach-of-fiduciary-duty and negligent-misrepresentation claims allege the same elements in his complaint and are alternate forms of pleading a legal-malpractice claim. *See Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. App. 1989) (noting in a legal-malpractice claim, that a breach-of-fiduciary-duty claim includes the same elements as a negligence claim). Furthermore, both Frederick's negligent-misrepresentation and reckless-misrepresentation claims are akin to a legal-malpractice claim in that they center on the duty of care owed to him by Farrish Johnson in their attorney-client relationship. *See Florenzano v. Olson*, 387 N.W.2d 168, 177-78 (Minn. 1986) (Simonett, J., concurring specially) (noting that negligent and reckless misrepresentation "both judge the representer's state of mind by an objective standard of due care," and reckless representation is wholly distinct from a claim of intentional misrepresentation, which requires the representer to have the "intent to deceive").

**II. The district court did not err in denying Frederick's "claim" of equitable tolling on the grounds of fraudulent concealment.**

Fraudulent concealment is an equitable doctrine, and we generally review a district court's decision whether to grant equitable relief for an abuse of discretion. *Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 513 (Minn. 2014). Under Minnesota law, the limitations period can be tolled "when the plaintiff can demonstrate that the defendant engaged in fraudulent concealment" of material facts that would lead to the discovery of the plaintiff's cause of action. *Lamere v. St. Jude Med., Inc.*, 827 N.W.2d 782, 788 (Minn. App. 2013). There is not a clear definition of what constitutes "fraudulent concealment." *See Wild v. Rarig*, 302 Minn. 419, 450, 234 N.W.2d 775, 795 (1975) "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Sanchez v. State*, 816 N.W.2d 550, 562 fn.10 (Minn. 2012) (quotation omitted) (addressing equitable tolling of postconviction statutes).

Fraudulent concealment occurs in an attorney-client relationship when "there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false * * *, and that the concealment could not have been discovered by reasonable diligence." *Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. App. 2003) (citing *Herrmann*, 590 N.W.2d at 641; *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. App. 1992), *review denied* (Minn. Aug. 4, 1992)). In other words, to establish fraudulent concealment, Frederick must show that: (1) Farrish Johnson made a statement or statements that concealed Frederick's cause of action; (2) the statement or

statements were intentionally false; and (3) the concealment could not have been discovered by reasonable diligence. *See Haberle*, 480 N.W.2d at 357.

Here, the record demonstrates that Frederick has not set forth sufficient facts to establish that Farrish Johnson concealed his cause of action. There is no evidence that Farrish Johnson fraudulently concealed Frederick's legal-malpractice claim to prevent him from bringing it at an earlier date. *See Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990) (holding that a claim of fraudulent concealment requires the party to show that the cause of action was actually concealed). Frederick had a copy of the antenuptial agreement in 2006, and it was clear on its face that the agreement lacked the requisite witnesses' signatures. Additionally, Frederick did not plead that Wallerich made intentionally false statements concerning the validity and enforceability of the antenuptial agreement; rather, he pleaded that Farrish Johnson "failed to use reasonable care or competence" in obtaining the information or communicating it to him, which is more akin to a negligence action. *See Williamson*, 661 N.W.2d at 651-52 (stating that in order to prove fraudulent concealment, appellant must demonstrate that statements were intentionally false). The district court properly denied tolling of the limitations period.

## III. The district court did not abuse its discretion by denying Frederick's motion to amend the complaint.

Minn. R. Civ. P. 15.01 authorizes the district court to liberally grant leave to amend pleadings "when justice so requires." "Generally, the decision to permit or deny amendments to pleadings is within the discretion of the district court and will not be reversed absent a clear abuse of discretion." *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291,

9

295 (Minn. 2003). Amendments to pleadings may be denied if it will accomplish nothing. *Envall v. Ind. Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987).

The district court did not abuse its discretion in denying Frederick's motion to amend. The fact that his financial losses became ascertainable upon his divorce is immaterial because the limitations period began to run on the day he suffered some damage, which was the day he married. *See Veit*, 879 N.W.2d at 10. Further, because Frederick's gross-negligence claim arose from the same set of events as his other claims, it is similarly time-barred.

**Affirmed.**