# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2481

_____

OnePoint Solutions, LLC, a Georgia    *
Limited Liability Company,    *
   *
        Appellant,    *
   *   Appeal from the United States
     v.    *   District Court for the
   *   District of Minnesota.
Michael Borchert; William Catuzzi,    *
   *
        Appellees.    *

_____

Submitted: February 12, 2007
Filed: May 11, 2007

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

OnePoint Solutions, LLC ("OnePoint") sued Michael Borchert and William Catuzzi, in the United States District Court for the District of Minnesota, alleging diversity jurisdiction over several state law causes of action. The district court dismissed some of OnePoint's claims under Federal Rule of Civil Procedure 12(b)(6). Thereafter, the court dismissed the remainder of the suit for lack of subject matter jurisdiction, finding that diversity jurisdiction did not exist because the amount in controversy did not exceed $75,000. We affirm in part and reverse in part.

I. *Background*

OnePoint, a limited liability company organized under the laws of the State of Minnesota, was formed by appellees Borchert and Catuzzi, along with Chet Reilly, to provide services to businesses operating as payroll service bureaus. Borchert, Catuzzi, and Reilly served on OnePoint's Board of Governors and individually owned separate corporations that were members of OnePoint.

OnePoint's complaint alleges that it removed Borchert and Catuzzi from their positions with the company on February 24, 2004. Nearly one month later, on March 19, 2004, Borchert, Catuzzi, and Reilly met and authorized three $33,000 payments from OnePoint—one $33,000 payment to each of them—as reimbursements for prior expenses incurred during their performance of OnePoint company business. After learning of these payments, OnePoint demanded that Borhcert, Catuzzi, and Reilly return the money, contending that the payments were invalid. Reilly complied with this demand, returning his $33,000 payment, but Borchert and Catuzzi refused, claiming that the payments were legitimate reimbursements.

Alleging subject matter jurisdiction based upon diversity of citizenship, OnePoint sued Borchert and Catuzzi in federal district court[1] asserting seven Minnesota[2] state-law causes of action—conversion, tortious interference with contract, money had and received, breach of fiduciary duty, civil theft under Minnesota Statute

[1]OnePoint, along with its member corporations and individuals on OnePoint's board, originally sued Borchert and Catuzzi for the two $33,000 payments in Georgia state court. However, that case was dismissed for lack of personal jurisdiction over the defendants. Subsequently, upon the defendants' motion, the Georgia court ordered the plaintiffs to pay $8,000 of Borchert's and Catuzzi's attorneys' fees because the "Plaintiffs' claims were substantially groundless in that it was clear that there was a complete lack of minimum contacts against the Defendants."

[2]OnePoint's "Member Control Agreement" states that the terms of the Agreement are to be construed under Minnesota law.

§§ 604.14, 609.52, and 609.53, unjust enrichment, and civil conspiracy. To reach the $75,000 jurisdictional threshold for diversity cases, OnePoint alleged three types of enhanced damages under Minnesota law. These include treble damages under the Minnesota receipt of stolen property statute; punitive damages under the Minnesota civil theft statute; and attorney's fees and costs based on the "third-party litigation" exception.

The district court dismissed OnePoint's claims for theft, receipt of stolen property, and attorney's fees for failure to state a claim. The court also dismissed the remainder of the suit for lack of subject matter jurisdiction, finding that the amount in controversy requirement for diversity jurisdiction was not met. In doing so, the court rejected each of OnePoint's bases for enhanced damages. On appeal, OnePoint contends that the district court erred in dismissing its suit for lack of subject matter jurisdiction.

## II. *Discussion*

Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). To determine jurisdiction, we look to the parties' status at the lawsuit's filing. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004).

At the time OnePoint commenced this action, it was a citizen of California, Georgia, Kansas, and Pennsylvania because its members at the time of filing were

citizens of those states.[3] The defendants, however, all resided in other states. Borchert was a citizen of Minnesota, and Catuzzi was a citizen of New Jersey. Thus, complete diversity of citizenship existed when the suit commenced.[4]

The main issue that this case presents is whether the amount in controversy exceeds $75,000. Without dispute, OnePoint has claims against Borchert and Catuzzi for $66,000, the total of their alleged theft from the company. However, OnePoint contends that three applicable enhanced damages provisions increase the potential damages beyond the $75,000 threshold for diversity jurisdiction. These damage provisions include: punitive damages under Minnesota's civil theft statute, Minnesota Statute § 604.14, treble damages under Minnesota's receipt of stolen property statute, Minnesota Statute § 609.53, and attorney's fees under the third-party litigation exception.

The district court dismissed OnePoint's claims for attorney's fees and its §§ 609.52 and 609.53 causes of action under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The court found that OnePoint had sufficiently

---

[3]At the time this action was commenced, the members of OnePoint were: Payroll World, Inc., a California corporation with its principal place of business in California; Payday USA, Inc., a Georgia corporation with its principal place of business in Georgia; Prairie Resource Enterprises, Inc., a Kansas corporation with its principal place of business in Kansas; and Erie Custom Computer Applications, Inc., a Pennsylvania corporation with its principal place of business in Pennsylvania.

[4]Although Borchert is a citizen of Minnesota and OnePoint is organized in Minnesota, complete diversity exists because an LLC is not necessarily a citizen of its state of organization but is a citizen of each state in which its members are citizens. *GMAC Commercial Credit LLC* , 357 F.3d at 829; *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) (stating that an LLC is not a citizen of its state of organization unless a member of the LLC is a citizen of that state). Because no member of OnePoint was a citizen of Minnesota at the time the action was brought, OnePoint is not a citizen of Minnesota.

stated a claim for civil theft under § 604.14 but subsequently granted appellees' motion to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, finding that OnePoint failed to establish the necessary amount in controversy under § 604.14 or any other alleged cause of action.

We review de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 845 (8th Cir. 2006), and the grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6), *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). OnePoint, as the party invoking federal jurisdiction, has the burden of proving the requisite amount by a preponderance of the evidence. *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005). We will now address whether any of the potential enhancements apply.

A. *Minnesota Statute § 604.14*

Under Minnesota Statute § 604.14, OnePoint seeks to recover the $66,000 allegedly misappropriated by appellees, plus up to an additional $66,000 in punitive damages. This provision, if applicable, would easily enable OnePoint's damages to surpass $75,000. Section 604.14 states, in relevant part:

> 604.14. Civil liability for theft
>
> Subdivision 1. Liability for theft of property. A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.
> . . .
> Subd. 4. Criminal action. The filing of a criminal complaint, conviction, or guilty plea is not a prerequisite to liability under this section. Payment or nonpayment may not be used as evidence in a criminal action.

Subd. 5. Recovery of property. The recovery of stolen property by a person does not affect liability under this section, other than liability for the value of the property.

Minn. Stat. § 604.14.

Put simply, § 604.14 states that a thief is civilly liable to the owner for the value of the property at the time it was stolen plus punitive damages of up to 100% of the value when stolen. *Id.* The language "plus punitive damages" entitles the plaintiff to some measure of punitive damages not to exceed the actual value of the stolen property, if it is established that the defendant stole the property. However, "up to 100 percent" caps the punitive award and makes clear that not every victim is entitled to the full punitive recovery.

According to the district court, OnePoint failed to provide any evidence of any amount of punitive damage. The court, therefore, held that punitive damages could not be used to meet the jurisdictional threshold. Thus, we must determine whether the uncertain level of punitive damages added to the $66,000 compensatory damages, would put OnePoint over the threshold amount of $75,000.

"Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994) (internal quotations and citations omitted). While "punitive damages are included in the amount in controversy, the existence of the required amount must be supported by competent proof." *Id.* at 388–89 (internal quotations and citations omitted). "Indeed, when determining the amount in controversy, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." *Id.* at 389 (internal quotations and citations omitted).

-6-

Generally, under Minnesota law, "[a] plaintiff may not seek punitive damages in the original complaint, but rather, may do so only upon permission of the court." *Williamson v. Prasciunas*, 661 N.W.2d 645, 653 (Minn. App. 2003) (citing Minn. Stat. § 549.191 ("Upon commencement of a civil action, the complaint must not seek punitive damages.")). Section 549.191 authorizes the plaintiff to motion the court for permission to amend the pleadings to claim punitive damages after a complaint has been filed. Notably, the motion must allege the legal basis for awarding punitive damages and must be accompanied by one or more affidavits showing the factual basis for the punitive damages. Minn. Stat. § 549.191; *Williamson*, 661 N.W.2d at 653. Appellees contend that because OnePoint has failed to comply with this procedure, its punitive damages claim is defective under Minnesota law, and thus the punitive damages should not be included in the calculation of the jurisdictional amount in controversy.

Our circuit precedent and Minnesota case law may differ in applying § 549.191. We have stated that under Minnesota law, a trial court may not allow an amendment for punitive damages without the requirements of § 549.191 having first been met, *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994). Minnesota case law, however, holds that it is not necessary for a plaintiff to receive permission from the trial court to amend its complaint to seek punitive damages when the remedy is sought under § 604.14. *See Williamson*, 661 N.W.2d at 653–54 (upholding denial of motion to amend to seek punitive damages because plaintiff could already receive punitive damages under § 604.14). In *Williamson*, the plaintiff filed suit against defendants under § 604.14 for civil theft of two pieces of jewelry worth $12,000. *Id.* at 652. In accordance with Minnesota law, Williamson did not seek punitive damages in her original complaint but filed a motion to amend her claim to seek punitive damages. *Id.* at 648. The trial court, however, denied the motion to amend, explaining that § 604.14 "already provides for 'punitive' damages in the amount of 100% of the value of the stolen property." *Id.* at 649. In affirming the denial of Williamson's motion to amend, the Minnesota Court of Appeals determined that the

district court acted within its discretion in denying Williamson permission to seek "additional punitive damages" because she had already recovered her stolen property and had also received a punitive damage award of $12,000, an award equal to the stolen property's value, in accordance with § 604.14. *Williamson*, 661 N.W.2d at 653–54.

Following the reasoning in *Williamson*, we conclude that a plaintiff alleging civil theft under Minnesota Statute § 604.14 may seek recovery of the stolen property and "punitive" damages of up to 100% of the value of the property at the time it was stolen, without receiving permission from the court to amend its complaint to seek punitive damages. Accordingly, OnePoint could seek to recover the $66,000 allegedly stolen from it plus punitive damages of up to $66,000, without having received permission from the district court to amend its complaint to seek punitive damages.

But, as stated above, the existence of the required amount in controversy, including the punitive damages alleged to reach the required amount, must still be supported by competent proof. *Larkin*, 41 F.3d at 388–89. The district court in this case found that OnePoint failed to provide any evidence to support its punitive damages claim and thus the potential punitives under § 604.14 could not be used to establish the amount in controversy. We must decide whether § 604.14, providing for punitive damages of up to 100% of the value of the property at the time it was stolen, requires additional proof of entitlement to the punitives or the extent of such entitlement.

In *Kopp v. Kopp*, 280 F.3d 883 (8th Cir. 2002), we stated that "[t]he district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Id.* at 885. While *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188–89 (1936) established that when a defendant challenges the plaintiff's allegations of the amount in controversy,

a plaintiff must establish jurisdiction by a preponderance of the evidence, "*McNutt* does not suggest that unliquidated damages in some specific amount must be proved before trial by a preponderance of evidence." *Kopp*, 280 F.3d at 885. The jurisdictional question in this case, as in *Kopp*, "is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are: In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Id.*

We have upheld jurisdiction, even though the jury ultimately awarded less than the statutory minimum, because jurisdiction "is measured by the amount properly pleaded or as of the time of the suit, not by the end result." *Zunamon v. Brown*, 418 F.2d 883, 887 (8th Cir. 1969). "[The *Zunamon*] holding implicitly suggests that jurisdiction was proper because, based on information known to the court at the time jurisdiction was challenged, the jury reasonably could have awarded more than the statutory minimum, even if the jury ultimately did not do so." *Kopp*, 280 F.3d at 885. "If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim." *Id.* (internal quotations and citations omitted).

As we see it, the federal court has jurisdiction over OnePoint's case "unless, as a matter of law, [OnePoint] could not recover punitive damages . . . , the amount of damages [OnePoint] could recover is fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents." *Id.* In the present case, Minnesota law provides for a plaintiff alleging civil theft to recover the value of the property at the time it was stolen plus up to an equal amount of punitive damages. Minn. Stat. § 604.14. As the value of the property purportedly stolen was $66,000, under § 604.14, OnePoint could recover $66,000 for the value of the property at the time it was stolen, plus up to an additional $66,000 in punitive damages. Any punitive damage award greater than $9,000 would meet the jurisdictional threshold. We hold that a reasonable jury could award

OnePoint damages totaling more than $75,000 should it believe that $66,000 was stolen by the appellees. OnePoint has thus met its burden of establishing that its claim under § 604.14 meets the jurisdictional threshold.

Because OnePoint has established diversity jurisdiction over its § 604.14 claim, the district court had original jurisdiction over that claim. 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different States."). As a result, the district court has supplemental jurisdiction over all of OnePoint's other claims against Borchert and Catuzzi that are "so related to" the § 604.14 claim "that they form part of the same case or controversy under Article III of the United States Constitution," even if those claims would not meet the requirements of federal jurisdiction on their own. 18 U.S.C. § 1367(a). "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'" *Myers v. Richland County*, 429 F.3d 740, 746 (8th Cir. 2005) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). A plaintiff's claims derive from a common nucleus of operative fact if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. OnePoint's claims against Borchert and Catuzzi all arose from the same set of facts and would ordinarily be expected to be tried together. Consequently, the district court has supplemental jurisdiction over all of OnePoint's claims, unless the claims were properly dismissed for failure to state a claim.

## B. *Minnesota Statute § 609.52*

The district court dismissed OnePoint's § 609.52 claim for failure to state a claim upon which relief could be granted. Section 609.52, entitled "Theft," is a

criminal statute without any provision for civil liability and therefore is inapplicable for purposes of enhancing civil damages.[5] We affirm the dismissal.

## C. *Minnesota Statute § 609.53*

The district court also dismissed OnePoint's § 609.53 claim for failure to state a claim. Section 609.53 states, in relevant part:

> 609.53. Receiving stolen property
>
> Subdivision 1. Penalty. Except as otherwise provided in section 609.526, any person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be *sentenced* in accordance with the provisions of section 609.52, subdivision 3.
> . . .
> Subd. 4. Civil action; treble damages. Any person who has been injured by a *violation* of subdivision 1 or section 609.526 may bring an action for three times the amount of actual damages sustained by the plaintiff.

Minn. Stat. § 609.53 (emphasis added).

The statute provides that a person may bring a civil action if he has been injured by a "violation" of subdivision 1 of the statute. *Id.* Subdivision 1 of § 609.53 states that a person who receives stolen property may be "sentenced" for that action. *Id.* The district court dismissed OnePoint's § 609.53 claim for treble damages after

---

[5]Section 609.52 contains four subsections. Subsection 1 is a definitional section. Subsection 2 explains what acts constitute theft and states that whoever commits a theft may be "sentenced" in accordance with subsection 3. Subsection 3 provides the applicable statutory sentencing ranges for one who has committed a theft. And subsection 4 provides sentencing considerations "for a person convicted of theft by wrongfully obtaining public assistance."

interpreting the "violation" requirement under the statute to require a criminal conviction.

OnePoint contends that the use of the word "violation" in § 609.53 instead of "conviction" means that no conviction is required for civil liability under the statute. OnePoint cites to *Itin v. Ungar*, 17 P.3d 129 (Colo. 2000), wherein the Colorado Supreme Court found that the Colorado "rights in stolen property" statute[6] did not require proof of a conviction but merely proof that the criminal act of theft had occurred. *Id.* at 134–35. In making this determination, the Colorado Supreme Court noted that the Colorado statute did not contain the words "'convict', 'conviction', or 'convicted.'" *Id.* at 133.[7]

The Minnesota Supreme Court has not addressed the issue of whether a conviction is required in order to recover civil damages under § 609.53. The only court to have directly addressed the issue, prior to the district court in this case, held that a "violation" of the statute required a criminal conviction. *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, Civ. No. 4-86-359, 1991 WL 441901 (D. Minn. Apr. 30, 1991) (unpublished). In discussing § 609.53, the court stated that "[a]lthough the statute does not specifically state what constitutes a 'violation' of subdivision 1, the Court interprets the term 'violation' as requiring a conviction under

---

[6] Colo. Rev. Stat. § 18-4-405.

[7] In *Itin*, the Colorado Supreme Court found that the legislative intent was not to require a conviction before civil damages, including treble damages, could be awarded under the statute. The Colorado "rights in stolen property" statute, as its name implies, protects the owner's rights in property wrongfully taken and provides him with the right to recover his property against whoever has it, even if the possessor is a good-faith purchaser or holder (although monetary damages and attorney's fees are not recoverable from a good-faith purchaser or holder). *Itin*, 17 P.3d at 133; Colo. Rev. Stat. § 18-4-405. Because the holder of the stolen property could be doing so in good faith, it is understandable that no criminal conviction would be required before the rightful owner could enforce his rights in the property under this statute.

the statute before the civil remedy can be invoked." *Id.* at \*79. Other Minnesota decisions have interpreted the provision similarly. *See Miller Johnson Steichen Kinnard, Inc. v. Smith*, No. C3-02-2270, 2003 WL 21911200 \*1 n.1. (Minn. App. Aug. 12, 2003) (unpublished) (noting that "Minn. Stat. § 609.53, subd. 4, provides that one injured by the *crime* of receipt of stolen property may bring a civil action for three times the damages sustained." (emphasis added)); *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F.Supp. 1342, 1350 n.5 (D. Minn. 1990) (stating that "it is questionable whether Minn. Stat. § 609.53 applies where there has been no criminal prosecution for theft.").

Additionally, as the district court recognized, § 609.53 does not expressly provide for civil liability under the statute without the filing of a criminal complaint, a criminal conviction, or a guilty plea. In contrast, § 604.14, the civil liability for theft statute discussed above, contains a specific provision to that effect. *See* § 604.14 subd. 4 ("The filing of a criminal complaint, conviction, or guilty plea is not a prerequisite to liability under this section."). The Minnesota legislature has shown that it can make a conviction exception for civil liability when it intends to, as it did in § 604.14. Accordingly, we conclude that the lack of a similar provision in § 609.53 reflects the legislature's intent that there be no civil liability under § 609.53 without the filing of a criminal complaint, a criminal conviction, or a guilty plea under the section. Thus, OnePoint's § 609.53 claim was properly dismissed.

D. *Third-Party Litigation Exception*

Lastly, OnePoint sought attorney's fees as well as costs for recovering the $33,000 from Reilly under the "third-party litigation exception." The district court dismissed these claims for failure to state a claim. Under the American rule, each party is responsible for paying its own attorney's fees unless there is a specific contractual provision or statutory authorization to shift the fees to an adversary. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998). However, under the third-party litigation exception to the American Rule, which Minnesota has adopted, a court may

"award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party." *Id.*

For Borchert and Catuzzi to be liable for OnePoint's attorney's fees under the third-party litigation exception, they must have: (1) committed a tortious act, (2) which propelled OnePoint into litigation, (3) with a third party. *See id.* Because OnePoint's complaint treats Borchert and Catuzzi as joint tortfeasors acting together during a single event that gave rise to this litigation, neither Borchert nor Catuzzi is a third party—Borchert's alleged tortious act did not propel OnePoint into litigation with Catuzzi and Catuzzi's alleged tortious act did not propel OnePoint into litigation with Borchert. OnePoint's position is untenable. Applying OnePoint's view, courts could award attorney's fees under the third-party litigation exception whenever a plaintiff sued two or more defendants who acted jointly.

Further, OnePoint never sued Reilly for return of the $33,000 payment that he had received—Reilly returned the money when asked. Thus, the third-party litigation exception does not cover OnePoint's costs of recovering the payment from Reilly, and Borchert and Catuzzi are not liable under the exception for those costs. Accordingly, OnePoint's claims for attorney's fees under the third-party litigation exception were properly dismissed under Rule 12(b)(6) for failure to state a claim, and we will affirm the district court's dismissal of that claim.

### III. *Conclusion*

For the foregoing reasons:

1. The district court's dismissal of OnePoint's claims under Minn. Stat. §§ 609.52 and 609.53 and for attorney's fees under the third-party litigation exception, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is affirmed;

-14-

2. The district court's dismissal of the remaining claims in OnePoint's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is reversed and remanded for further proceedings consistent with this opinion.

_____