In re Terry Bruce BURROW, Debtor.

Farmers Bank and Trust
Company, Plaintiff

v.

Chickasaw Properties, LLC; Belz Porter Commons, L.P. f/k/a Belz–Burrow Porter Commons, L.P.; Wal–Mart Stores, Inc.; State of Wisconsin Investment Board; AXA Equitable Life Insurance Company f/k/a Equitable Life Assurance Society of the United States; JDCF Investments, LLC d/b/a ABC Plumbing and Electric; J.C. Penney Corporation, Inc.; and Tenants of Real Property Located at 301 Service Road, Blytheville, Arkansas, Defendants.

Bankruptcy No. 3:12–BK–14410.
Adversary No. 3:13–AP–01080.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 7, 2013.

Kevin P. Keech, Keech Law Firm, PA, N. Little Rock, AR, for Debtor.

Gary D. Jiles, Millar Jiles, LLP, Conway, AR, for Plaintiff.

Chickasaw Properties, LLC, pro se.

Roscoe Porter Feild, Burch, Porter & Johnson, PLLC, Memphis, TN, Lyndel Anne Mason Cavazos Hendricks Poirot & Smitham P.C., Dallas, TX, Marshall S. Ney, Mitchell Williams Selig Gates & Woodyard, Rogers, AR, Wade M. Early, Husch Blackwell Sanders, LLP, Springfield, MO, D. Chris Gardner, Gardner Law Firm, P.A., Jonesboro, AR, for Defendants.

State of Wisconsin Investment Board, pro se.

J.C. Penney Corporation, Inc., pro se.

Tenants of Real Property Located at 301 Service Road, Blytheville, Arkansas, pro se.

## ORDER GRANTING MOTION TO REMAND AND MOTION TO ABSTAIN

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is a *Motion to Remand and for Abstention,* filed by Gary D. Jiles, on behalf of Farmers Bank and Trust Company ("**Farmers**"). Farmers's motion comes in response to a *Petition of Removal* filed by Marshall S. Ney, on behalf of Wal–Mart Stores, Inc. ("**Wal–Mart**"). Wal–Mart removed a state foreclosure action commenced by Farmers that was pending in the Circuit Court of Mississippi County, Arkansas, No. CV–2013–108 (the "**Foreclosure Action**") to this Court pursuant to 28 U.S.C. §§ 1441 and 1452.[1] In the Foreclosure Action, Farmers requested a determination that its lien is valid and superior to all other encumbrances and interests associated with the property to be foreclosed on. The property subject to foreclosure is titled to Chickasaw Properties, LLC ("**Chickasaw**"). Chickasaw is a limited liability company ("**LLC**") whose sole member and manager is Terry Bruce Burrow ("**Burrow**"), the Debtor in the above-captioned bankruptcy case. In its *Motion to Remand and for Abstention and its Brief in Support,* Farmers argues, among other things, that the Court lacks jurisdiction over the Foreclosure Action. For the reasons stated below, the Court grants Farmers's *Motion to Remand and for Abstention.*

## OVERVIEW

The real property at issue in the Foreclosure Action is a shopping complex in Blytheville, Arkansas (the "**Property**"). Chickasaw, whose sole LLC member is the Debtor, currently owns the Property. Numerous entities, including Wal–Mart, claim interests in the Property pursuant to various lease and sublease agreements. Wal–Mart maintains that the Burrow Family Trust (the "**Burrow Trust**") holds an interest in the Property by virtue of a master lease and a sublease governing the Property. The Burrow Trust is a self-settled revocable trust in which the Debtor is the trustee and a beneficiary.

The Property is subject to several encumbrances and has been the source of significant litigation. AXA Equitable Life Insurance Company f/k/a Equitable Life Assurance Society of the United States ("**Equitable Life**") holds a mortgage on the Property (the "**Equitable Life Mortgage**") and has an interest in the master lease governing the Property; a prepetition judgment obtained against Wal–Mart

---

**1.** Unless otherwise specified, all statutory references are to Title 28 of the United States Code.

in a Missouri State Court confirms the same. Farmers also holds a mortgage on the Property (the **"Farmers Mortgage"**). Postpetition, Farmers commenced the Foreclosure Action to foreclose on its mortgage and on a judgment lien obtained pursuant to a prepetition default judgment against Chickasaw and the Debtor in an Arkansas State Court. In its foreclosure complaint, Farmers seeks a determination that its mortgage has priority over all other encumbrances on and interests in the Property. Chickasaw and Equitable Life are named defendants in the Foreclosure Action, but neither the Debtor nor the Burrow Trust is named.

From these complex facts, Wal–Mart makes essentially two arguments which speak to whether there is "related to" bankruptcy jurisdiction over the Foreclosure Action. First, Wal–Mart contends that the Property itself is part of the Debtor's estate. Because the Debtor owns the only LLC membership interest in Chickasaw, Wal–Mart argues that any property acquired by Chickasaw is property of the Debtor. Second, Wal–Mart contends that the Burrow Trust has leasehold interests in the Property that may be affected by the foreclosure. Here, Wal–Mart argues that because the Burrow Trust is freely revocable by the Debtor who is both the trustee and a beneficiary, property acquired by the Burrow Trust is property of the Debtor. Although the Court finds that Wal–Mart's second argument may provide a basis for bankruptcy jurisdiction, it nevertheless finds that abstention is warranted, and indeed mandated, in this case.

### FACTS[2]

On December 4, 2002, Chickasaw purchased the Property from the Morris Family Corporation ("**MFC**"). As a condition of the sale, Chickasaw assumed the Equitable Life Mortgage on the Property and a promissory note payable to Equitable Life (the **"Equitable Life Note"**). Chickasaw purchased the Property subject to certain leasehold obligations. Years earlier, in September 1992, MFC leased the Property to Wal–Mart for a 25–year term (the **"Master Lease"**). The Master Lease was freely assignable by MFC, as lessor, and by Wal–Mart, as lessee. Through a series of assignments, Equitable Life became the lessor and the entity entitled to receive rents due under the Master Lease.[3]

As lessee, Wal–Mart assigned the Master Lease to an entity called Belz Porter Commons, L.P. f/k/a Belz–Burrow Porter Commons, L.P. ("**Belz**") in 1998. Wal–Mart continued to remain liable under the Master Lease in the event of default by Belz. In September 2000, Belz subleased a portion of the Property covered by the Master Lease (the **"Sublease"**) to J.C. Penney Corporation, Inc. ("**JC Penney**"). JC Penney took possession of the property covered by the Sublease and operated a retail store. In January 2005, Belz assigned all of its rights, title, and interest in the Master Lease and the Sublease to the Burrow Trust. Although it is unclear

---

**2.** Many of the Court's findings of facts are culled from a June 15, 2011 judgment entered by the Circuit Court of Green County, Missouri. *See AXA Equitable Life Ins. Co. v. Wal–Mart Stores, Inc.*, Case No. 1031–CV 12749.

**3.** Originally, MFC assigned the Master Lease to Confederation Life Insurance Company ("**CLC**") and the State of Wisconsin Investment Board. These two entities had financed

MFC's purchase of the Property. In March 1997, CLC assigned its interest in the Master Lease to the Morgan Guaranty Trust Company ("**MGTC**"). In December 1997, MGTC assigned its interest in the Master Lease to Equitable Life. For reasons that are not clear from the record, the State of Wisconsin Investment Board relinquished its interest in the Master Lease in August, 2009.

from the record whether the Burrow Trust further assigned the Master Lease or the Sublease to another entity, JC Penney continues to assert a leasehold interest in the Property.[4]

### The Equitable Life Litigation

In February 2010, Wal–Mart stopped making payments under the Master Lease and Chickasaw stopped making payments under the Equitable Life Note. Equitable Life accelerated its note and sued Wal–Mart in the Circuit Court of Green County, Missouri, Case No. 1031–CV 12749, for the back rent due under the Master Lease. On June 15, 2011, the Missouri Court entered a judgment in Equitable Life's favor against Wal–Mart. The Court held that Equitable Life was entitled to keep all past and future rent due under the Master Lease until the Equitable Life Note was paid in full. Additionally, the Missouri Court held that Equitable Life had the right to demand and collect all past and future rent due under the Master Lease directly from Wal–Mart. Finally, the Court concluded that Wal–Mart was required to pay Equitable Life $505,535.20 in back rent due under the Master Lease. Wal–Mart was the only defendant named in the judgment.

### The Farmers Litigation

While the Equitable Life litigation was pending in Missouri, Farmers sued Chickasaw and the Debtor in the Circuit Court of Mississippi County, Arkansas. Case No. CV–2010–326. The suit stemmed from a $525,290.00 promissory note executed by Chickasaw in 2009 and payable to Farmers (the "**Farmers Note**"). To secure the Farmers Note, Chickasaw granted Farmers a mortgage on the Property (*i.e.*, the Farmers Mortgage). The Debtor signed the Farmers Note and the Farmers Mortgage in his capacity as an LLC member of Chickasaw. The Debtor also personally guaranteed the Farmers Note. Consequently, when Chickasaw defaulted on the Farmers Note, Farmers sued both Chickasaw and the Debtor. On November 16, 2010, Farmers obtained a default judgment against Chickasaw and the Debtor for $520,519.75.[5] Subsequently, Farmers obtained a judicial lien on the Property in support of its judgment. The Debtor filed a Chapter 11 bankruptcy petition on July 30, 2012.

### The Foreclosure Action

Postpetition, on May 31, 2013, Farmers commenced the Foreclosure Action. CV–2013–108. Farmers sought to foreclose on its mortgage and judgment liens. In addition to Chickasaw, Farmers named several other defendants that had, or potentially had, an interest in the Property. These additional defendants are: Equitable Life; Wal–Mart; Belz; JC Penney; JDCF Investments, LLC d/b/a ABC Plumbing and Electric ("**JDCF**"); and Tenants of Real Property Located at 301 Service Road, Blytheville, Arkansas. Neither the Debtor nor the Burrow Trust was named as a defendant.

In its prayer for relief, Farmers requests, among other things, a judgment decreeing its mortgage superior to the interests and liens of all the defendants and an order requiring certain defendants to remit future rents and lease payments to Farmers. Wal–Mart, Equitable Life, and several other defendants contest the validity and/or the priority of the Farmers

---

**4.** Belz claims no interest in the Sublease.

**5.** This is because, in Arkansas, a default entered in state court is a default judgment and no further act is needed in contrast to the two-step process needed to obtain a default

judgment in federal court. *See Humes v. LVNV Funding, L.C.C. (In re Humes)*, 496 B.R. 557, 565 n. 1 (Bankr.E.D.Ark.2013); Fed. R.Civ.P. 55(a)-(b).

Mortgage on the Property. Thus, a key issue in the Foreclosure Action is whether the Farmers Mortgage is superior to the Equitable Life Mortgage and what effect that determination will have on the other entities with interests in the Property.[6] But the threshold issue for this Court is whether it has jurisdiction over any part of the Foreclosure Action.

## DISCUSSION

In this case, the Court need only determine two issues: (1) whether it has jurisdiction over this foreclosure litigation, and if so; (2) whether the Court must abstain from hearing the litigation and remand it to State Court.

### Jurisdictional Analysis

Initially, the parties get bogged down by whether there is original jurisdiction, specifically diversity jurisdiction, over the Foreclosure Action that would permit its removal. This is irrelevant because even if there were diversity jurisdiction, this bankruptcy court would not necessarily have jurisdiction. A bankruptcy court's original jurisdiction is not coextensive with diversity jurisdiction and is confined by § 1334(a)–(b) to the bankruptcy case itself and those proceedings that " 'arise under title 11,' those that 'arise in cases under title 11,' and those 'related to cases under

title 11.' " *In re Farmland Indus., Inc.,* 296 B.R. 793, 802 (8th Cir. BAP 2003). Wal–Mart argues that there is bankruptcy jurisdiction over that part of the Foreclosure Action which will require a determination of the priority of interests in the Property. The Court finds that this aspect of the Foreclosure Action—essentially a lien priority dispute involving various nondebtor entities—could fall within the "related to" jurisdiction of the bankruptcy court.[7]

■■■ In reaching this finding of possible "related to" jurisdiction, the Court first notes that Farmers's requested relief here—a determination that its mortgage is valid and superior to all other encumbrances on, and interests in, the Property—is not a proceeding that "arises under" title 11. Arising under proceedings are those "created by or based on a provision of the Code." *Frelin v. Oakwood Homes Corp.,* 292 B.R. 369, 376 (Bankr.E.D.Ark. 2003) (citing *Nat'l City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986)). The validity and priority of mortgage and leasehold interests is determined by state law. Therefore, resolving whether the Farmers Mortgage is superior to the other claimed interests in the Property will require the adjudication of state law property rights. For this reason, Farmers's requested relief is not a proceeding that

---

**6.** Equitable Life argues that any determination that the Farmers Mortgage is superior to its mortgage is barred by the doctrines of issue and claim preclusion. Equitable Life takes the position that the Missouri judgment conclusively established its mortgage as being superior to all other encumbrances on the Property. Additionally, JDCF moved to dismiss the Foreclosure Action before it was removed to this Court, citing a pending case in Mississippi County, Arkansas, allegedly consisting of the same parties and arising out of the same transaction.

**7.** Wal–Mart also argues that because determinations of the validity, extent, or priority of

liens are "core proceedings" of the bankruptcy court, see § 157(b)(2)(K), there is "related to" jurisdiction. This argument puts the cart before the horse. The threshold inquiry is whether the bankruptcy court has jurisdiction over the proceeding under § 1334. Whether a proceeding is "core" or "noncore" is a secondary determination addressing the bankruptcy court's authority to enter a final judgment in the proceeding. *See Frelin v. Oakwood Homes Corp.,* 292 B.R. 369, 377 (Bankr. E.D.Ark.2003) ("Once the Court's jurisdiction is established, the Court determines whether a civil proceeding is categorized as either a core proceeding or a non-core proceeding.").

"arises in" a case under title 11. Arising in proceedings are those that are "not based on any right expressly created by the bankruptcy code but ha[ve] no existence outside the bankruptcy case." *Id.* at 376–77. Mortgage priority and leasehold disputes are conflicts over state defined property rights, and they exist independently of bankruptcy.

 The final question is whether the Farmers's request relief is a proceeding that is "related to" a case under title 11. In this circuit, "related to" proceedings are determined by application of the "conceivable effect" test. *Abramowitz v. Palmer,* 999 F.2d 1274, 1277–78 (8th Cir.1993); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 303 n. 6, 115 S.Ct. 1493 n. 6, 1511, 131 L.Ed.2d 403 (1995) (noting that only the Second and Seventh Circuits "seem to have adopted a slightly different test."). Under the conceivable effect test, a civil proceeding is "related to" a bankruptcy when:

> ... *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* * * *. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action * * * and which in any way impacts upon the handling and administration of the bankrupt estate.

*Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782, 786 (8th Cir.1987) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). In determining that Farmers's requested relief may have a conceivable

effect on the Debtor's estate being administered in bankruptcy, the Court separately addresses the two property interests Wal–Mart maintains will be impacted: (1) the Debtor's alleged interest in the real property; and (2) the Burrow Trust's alleged interest in the Master Lease and the Sublease.

## A. The Debtor's Interest in the Property

Wal–Mart's main argument in support of "related to" jurisdiction is that because the Debtor owns the only LLC membership interest in Chickasaw, the Debtor owns the Property titled to Chickasaw. Therefore, a foreclosure on the Property is a foreclosure on property of the Debtor's estate.

 Wal–Mart's argument is based on the mistaken assumption that when a member of an LLC files bankruptcy, property acquired by the LLC is included in the member's bankruptcy estate. Code § 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The nature and extent of these property interests are determined by state law. *Mehlhaff v. Allred (In re Mehlhaff),* 491 B.R. 898, 900 (8th Cir. BAP 2013). Arkansas's LLC statute says "property ... acquired by a limited liability company is property of the limited liability company and not of the members individually." Ark.Code Ann. § 4–32–701(a). This includes real property acquired in the name of the LLC. § 4–32–701(b).[8] Thus, when the Debtor filed bankruptcy, his membership interest be-

---

8. Most LLC statutes provide that LLC property is not the property of the LLC's individual members. *See, e.g., In re Brittain,* 435 B.R. 318, 322 (Bankr.D.S.C.2010) (analyzing South Carolina statute); *In re Aldape Telford Glazier, Inc.,* 410 B.R. 60, 64 (Bankr.D.Idaho 2009) (Idaho statute); *Assocs. Commercial*

*Corp. v. Rodio (In re Rodio),* 257 B.R. 699, 701 (Bankr.D.Conn.2001) (Connecticut statute); *see also Sheehan v. Warner (In re Warner),* 480 B.R. 641, 653 (Bankr.N.D.W.Va.2012); *In re HSM Kennewick, L.P.,* 347 B.R. 569, 572 (Bankr.N.D.Tex.2006).

came property of the estate whereas any property acquired by Chickasaw did not.[9]

■ Although the Court concludes that the Property is not part of the Debtor's bankruptcy estate, this does not end the Court's analysis. Under the conceivable effect test, "related to" jurisdiction may be present even where the civil proceeding is not against the debtor or against the debtor's property. *Pacor,* 743 F.2d at 994; *see also Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325, 330 (8th Cir.1988) (". . . [E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor.*"). For example, there is "related to" jurisdiction when the resolution of a lawsuit between nondebtors will result in an indemnity claim being filed against the estate that will jeopardize the debtor's chances of reorganizing. *See Farmland Indus.,* 296 B.R. at 805–06; *see also Dogpatch U.S.A.,* 810 F.2d at 786 (finding "related to" jurisdiction where dispute between nondebtor parties could trigger the debtor's liability and duty to pay). Here, Wal–Mart does not allege that the Debtor will incur some sort of contingent liability if Farmers's requested relief is determined in State Court.

■ Instead, Wal–Mart suggests that a determination of whether the Farmers Mortgage is superior to the other interests in the property could affect the value of the Debtor's membership interest in Chickasaw. Yet, "the economic effect of litigation on the value of a separate nondebtor entity in which a debtor owns an equity interest is insufficient to create [related to] jurisdiction." *LAR MHP Holdings, LP v. Mordini (In re Mordini),* 491 B.R. 567, 571 (Bankr.D.Colo.2013); *see also Eastjun Coop., LLC v. Spike Club LLC (In re Wilson),* No. 12–32715–WIL, 2013 WL 3880053, at *1–*2 (Bankr.D.D.C. July 25, 2013); *Tower Auto. Mexico v. Grupo Proeza, S.A. (In re Tower Auto., Inc.),* 356 B.R. 598, 601 (Bankr.S.D.N.Y. 2006); *Parkview–Gem, Inc. v. Stein,* 516 F.2d 807, 809 (8th Cir.1975). In *Mordini* and *Wilson,* a potential decrease in the value of a debtor's LLC shares alone was held to be insufficient to establish "related to" jurisdiction over non-debtor disputes. *Mordini,* 491 B.R. at 568–69, 572; *Wilson,* 2013 WL 3880053, at *1–*2. According to the Court in *Mordini,* extending jurisdiction to such situations would:

> . . . potentially expand[ ] the bankruptcy court's jurisdiction to any lawsuit involving any corporation in which the debtor owns stock. Under such an expansive interpretation of "related to" jurisdiction, if a debtor owned a single share of a corporation, all litigation of that corporation, in whatever court around the globe, would be brought within the reach of "related to" jurisdiction of the bankruptcy court in which the debtor had filed its case. It is highly unlikely that "related to" jurisdiction of 28 U.S.C. § 1334(b) was intended to cast such a broad net.

491 B.R. at 571; *see also Tower Auto.,* 356 B.R. at 602 (". . . [A] Chapter 7 debtor's distributable assets might consist exclusively of the stock of a multinational corporation, but that happenstance would not

---

9. In this respect, the bankruptcy of an LLC member is similar to the bankruptcy of a limited partner. When a limited partner files bankruptcy, the partner's partnership interest becomes property of the estate whereas the assets of the partnership do not. *See In re* *Burnett,* 241 B.R. 438, 439 (Bankr.E.D.Ark. 1999) (applying Arkansas law); *see also E.A. Martin Mach. Co. v. Williams (In re Newman),* 875 F.2d 668, 670 (8th Cir.1989) (analogous Missouri law).

give the bankruptcy court jurisdiction of a patent or antitrust dispute involving that corporation, no matter how important to its financial well-being.").[10] The Court agrees with the foregoing explanations of why "related to" jurisdiction cannot be extended to situations like the present one. To adopt Wal–Mart's position would take the concept of "related to" jurisdiction too far. The Debtor's membership interest in Chickasaw is insufficient to establish "related to" jurisdiction over Farmers's requested relief.

### B. The Burrow Trust's Interest in the Master Lease and Sublease

■ Although the Debtor's membership interest in Chickasaw is insufficient to establish "related to" jurisdiction, the Court must also analyze whether the Debtor's alleged interest in the Master Lease and the Sublease provides "related to" jurisdiction.

Wal–Mart argues that because the Burrow Trust is revocable, property acquired by the trust is property of the Debtor's bankruptcy estate. Wal–Mart maintains that the Debtor, through the Burrow Trust, continues to have an interest in the Master Lease and the Sublease. Adjudicating whether the Farmers Mortgage is superior to the other interests in the Property might, therefore, have a conceivable effect on the Debtor's leasehold interests in the Property. The Court agrees.

■ First, the Court concludes, for purposes of this motion, that the Burrow Trust is a self-settled revocable trust and property acquired by the trust is property of the Debtor's estate. This has been the Debtor's position in its filings with the Court. *Cf. Price v. America's Servicing Co. (In re Price)*, 403 B.R. 775, 781 n. 6 (Bankr.E.D.Ark.2009) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (quoting *In re Henderson*, 197 B.R. 147, 156 (Bankr.N.D.Ala.1996)). Moreover, the Court has approved various sales of Burrow Trust property based on representations that the sale proceeds will go into the Debtor's estate. Having concluded, for the purposes of this motion, that the Burrow Trust is a self-settled revocable trust, any property interest the trust acquired in the Master Lease and the Sublease is property of the Debtor's estate. *See In re Schultz*, 324 B.R. 712, 717, 721–22, *opinion supplemented*, 324 B.R. 722 (Bankr. E.D.Ark.2005) (finding property acquired by revocable trust constituted property of the settlor's estate under 11 U.S.C. § 541(a)); *see also Askanase v. Living-Well, Inc.*, 45 F.3d 103, 106 (5th Cir.1995).

Second, the Court finds that adjudicating Farmers's requested relief could have a conceivable effect on the administration of the Debtor's estate in bankruptcy. Because it is not clear whether Arkansas law requires a lessee of property subject to foreclosure proceeding to be made a party in the foreclosure proceeding,[11] deciding

---

**10.** Wal–Mart also claims that the decrease in the value of the Debtor's membership interest also effects the estate because it will hamper the debtor's ability to claim a tax benefit. As held in *Wilson*, this does make "the potential loss to the debtor any more direct and does not bolster ... related to [jurisdiction]." 2013 WL 3880053, at *1 n. 1.

**11.** Farmers cites *Tollett v. Titsworth*, 12 Ark. App. 21, 670 S.W.2d 467 (1984) for the posi-

tion that even if the Debtor or the Burrow Trust has a leasehold interest in the Property, they would have to be a named party in the Foreclosure Action to affect their property interests. *Tollett* held that when a senior mortgagee forecloses on property and does not make a junior lienholder a party, the junior lienholder's "status is the same as if there had been no foreclosure action." 12 Ark.App. at 23, 670 S.W.2d at 469 (citing *Smith v. Simpson*, 129 Ark. 275, 195 S.W.

whether Farmers is the senior mortgagee in this case could affect an interest the Debtor might have in the Master Lease and the Sublease. From the record, the Court cannot determine whether resolving Farmers's requested relief will extinguish these leasehold interests or require the Burrow Trust, as lessee, to make lease payments to a new party. Either scenario is conceivable and would affect the administration of the Debtor's estate in bankruptcy. Accordingly, the Court finds there could be "related to" jurisdiction over Farmers request for a declaration that its lien is valid and superior to all other interests in the Property.

### Mandatory Abstention

■■■ Even if there is "related to" jurisdiction over Farmers's requested relief, the Court finds mandatory abstention under § 1334(c)(2) is required here. Pursuant to § 1334(c)(2), the Court must abstain from a claim or a cause of action if: (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case; (4) such action could not have been commenced in federal court absent § 1334 jurisdiction; (5) such action is commenced in State Court; and (6) such action can be timely adjudicated in State Court.

*Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 381 (Bankr.E.D.Ark.2003) (citing *Titan Energy*, 837 F.2d at 333 n. 14).[12] Furthermore, "[w]here a state court proceeding sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling." *Titan Energy*, at 332 (citations omitted). If all six factors are present, the bankruptcy court must abstain. *Frelin*, 292 B.R. at 381.

The Court finds all six *Frelin* requirements apply in this case. It is undisputed that Farmers's *Motion to Remand and for Abstention* is timely. In its discussion of "related to" jurisdiction, the Court determined that Farmers's requested relief solely involves questions of mortgage and property law. These are state law questions. Moreover, the Court has already determined that there is, at best, "related to" jurisdiction over the requested relief by virtue of the Debtor's potential interest in the Master Lease and the Sublease; the relief could not have been sought in federal court absent "related to" jurisdiction under § 1334(b).[13] Finally, Farmers's requested relief was sought in State Court and there is no indication or suggestion that the

---

1067 (1917)). *Tollett* did not address leasehold interests in property, which are the property interests at issue here.

**12.** The Eastern District of Arkansas follows the majority position that mandatory abstention under § 1334(c)(2) applies to removed cases under § 1452(a). *Frelin*, 292 B.R. at 380–81; *see also First Fed. Sav. & Loan Ass'n v. Drake (In re Ramada Inn–Paragould Gen. P'ship)*, 137 B.R. 31, 33 n. 3 (Bankr.E.D.Ark. 1992) (recognizing split in case law).

**13.** Even if the Foreclosure Action was removed to the district court where the parties' arguments regarding diversity jurisdiction would be relevant, it is abundantly clear that there is no diversity jurisdiction over the case. *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir.2007) ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."). There are no allegations in Wal–Mart's *Petition of Removal* or its supporting briefs that all defendants in the Foreclosure Action are diverse from Farmers. Even if there were, Chickasaw holds the same Arkansan citizenship as another defendant, the Debtor. *Id.* (holding for purposes of diversity jurisdiction, an LLC's citizenship is that of each LLC member).

State Court cannot timely adjudicate the issue.[14]

Having concluded that all six of the *Frelin* requirements are present, the Court is required to abstain under § 1334(b), and the Court grants Farmers's *Motion to Remand and for Abstention.*

### Discretionary Abstention and Equitable Remand

Although the Court has determined that mandatory abstention requires the entire Foreclosure Action to be remanded to State Court, the Court further finds that discretionary abstention and equitable remand provide an alternative basis for this holding.

### A. Standard For Discretionary Abstention

Bankruptcy courts have discretion to abstain from hearing non-core proceedings under § 1334(c)(1). This section provides

Nothing ... prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

■■■ In addition to general discretionary abstention standards in § 1334(c)(1), the Bankruptcy Appellate Panel of the Eighth Circuit has provided a number of factors for courts to consider in determining whether abstention is appropriate. These factors are:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficult or unsettled nature of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than the form of an asserted 'core' proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden [on] the bankruptcy court's docket,

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

*Williams v. Citifinancial Mortgage Co. (In re Williams)*, 256 B.R. 885, 894 (8th Cir. BAP 2001) (citations omitted).

### B. Standard For Equitable Remand

■■■ Equitable remand of a removed action is governed by § 1452(b). This provision provides, in part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

---

**14.** Retaining the lien priority issue and remanding the rest of the Foreclosure Action would also add unnecessary complexity and costs to an already complex case. Further-more, courts disagree over whether that can be done. *See Berry v. Pharmacia Corp.*, 316 B.R. 883, 887 & n. 7 (S.D.Miss.2004) (discussing cases).

§ 1452(b). "The analysis used to determine whether equitable remand is just under § 1452(b) is virtually identical to that used to determine whether discretionary abstention is merited under § 1334(c)(1)." *Frelin*, 292 B.R. at 383. However, in deciding whether equitable remand is warranted a court should consider these additional factors:

(1) whether remand serves principles of judicial economy;

(2) whether there is prejudice to unremoved parties;

(3) whether the remand lessens the possibilities of inconsistent results; and

(4) whether the court where the action originated has greater expertise.

*Id.* at 383–84.

### C. The Court's Findings

 The Court finds that most of the factors to be applied when considering a motion for discretionary abstention and equitable remand weigh in favor of abstaining from and remanding the entire Foreclosure Action to State Court.

Applying the applicable *Williams* factors, the Court finds that the relief requested by Farmers is purely governed by state issues and no bankruptcy issues are involved; the requested relief may implicate unsettled State law issues regarding leasehold interests; the relief was initially requested in State Court; there is no basis for the relief to be sought in federal court other than, perhaps, via "related to" jurisdiction under § 1334(b); the requested relief is, at best, tangentially related to the main bankruptcy case; a determination on Farmers's requested relief would be decidedly a non-core proceeding; the requested relief can be decided by the State Court with enforcement left to the bankruptcy court (should the need arise); the Court's docket will be heavily burdened by this contentious litigation; and the requested

relief directly involves only nondebtor parties. Additionally, remanding the entire Foreclosure Action to State Court, which typically handles foreclosures in this State and has greater knowledge and familiarity with the intricacies of state foreclosure law, better serves judicial economy and lessens the possibilities of inconsistent results.

### CONCLUSION

There is a valid argument that the Court has "related to" bankruptcy jurisdiction over a piece of the Foreclosure Action that would permit removal of part of the case. If "related to" jurisdiction does exist, the Court, however, must abstain from adjudicating the proceeding under § 1334(c)(2) because all the requirements for mandatory abstention are present. Alternatively, absent mandatory abstention, the Court exercises its discretionary authority under § 1334(c)(1) to abstain from hearing the relief requested by Farmers. Ultimately, the Court is being asked to intervene in a complex state foreclosure action between nondebtor parties where property of the estate is not directly at issue, and the Debtor is, at best, tangentially affected. This the Court cannot and will not do.

Accordingly, it is hereby

**ORDERED** that Farmers's *Motion to Remand and for Abstention* is **GRANTED.**

**IT IS SO ORDERED.**